The fact of the matter here is that in February of 2019, when the Plaintiff Appellant Frank Vaughan filed his Voting Rights Act challenge under Section 2, the law of the Fifth Circuit was not that there is a prohibition on a white plaintiff filing a Section 2 challenge on the grounds that the minority voting bloc that he tends to vote with cannot confer injury in fact standing just because that individual does not have the same color of skin as that minority voting bloc that he tends to vote with. Well, you say that at that time, what was the time frame you just said? February of 2019. February of 2019. So the law was not, did not prohibit that. I mean, are you suggesting that the law has now changed to clarify that? Your Honor, as the case progressed into the summary judgment phase, the lower court, based on the arguments of opposing counsel in summary judgment, found that there was no injury in The case that suggests that that is a rule comes from the Eastern District of Virginia. It does not come from binding law in the Fifth Circuit. Well, sure. But so I'll just ask you straight out. I mean, we're here on an abuse of discretion on sanctions. So what is, what was the authority that Mr. Vaughn was relying on to confer standing on a white plaintiff saying that black and Hispanic votes have been diluted? Was there any such authority? Your Honor, the authority is that there is nothing saying that it is an impossibility. In fact, the construction of the Voting Rights Act gives all aggrieved persons injury, in fact, standing to... Well, so that's just, we're just backing up the question then one further. What authority would say that a white person is aggrieved by the ostensible dilution of black and Hispanic voting rights? Your Honor, it's unsettled. And that cuts to the crux of the issue here, which is... I mean, if we were talking, for example, if we were talking about jurors, can a white juror bring a lawsuit and say, the prosecutor, I'm sorry, can a white defendant bring a lawsuit and say, I object to the prosecutor striking black jurors? I mean, there are cases on that. Your Honor, there's a very specific jurisprudence dealing with exactly that situation. And frankly, that jurisprudence is tailored specifically to that situation when you're talking about striking juries. On the record before us here, however, when you're talking about standing and the notion that an individual loses their voting rights because the voting bloc that they tend to vote is muffled as a result of a racially discriminatory voting regime, then that person is also injured in fact. And there is not law affirmatively one way or the other. Well, look, I mean, look, I was a lawyer, and I made some arguments in court, maybe even in this court, that were sort of pushing the envelope. So I get it. But when you do that, you have to say, I am arguing for the extension of existing precedent. Right? I mean, you better do that, because you'll lose otherwise, and you might get sanctioned if you don't do that. So did Mr. Vaughn make an argument to the district court that, look, I know there's nothing on point here, but I think these precedents should be extended to this situation? Your Honor, the US v. Strain, which— Yeah, but did he do that? That's what I'm asking, just as a factual matter. Did he do that? Yes, Your Honor. And— So I looked the record and find an argument being made by Mr. Vaughn, look, there needs to be an extension of precedent to this situation. Maybe not in those exact words, but the argument relies on US v. Strain, which is very clear when it comes to cases dealing in racial gerrymandering. Standing is a big gray area, and, you know, the fact—and to borrow the language of the Supreme Court and US v. Strain— Well, in that case, why was standing in a gray area? Because of the notion that in a racially gerrymandered jurisdiction, all members who vote in that district are harmed by racial discrimination. So that notion belies the possibility that— Was it about a plaintiff of a different race than the persons whose votes were allegedly diluted? No, Your Honor, but the broad holding of that case is not limited to just that situation, at least not expressly. Was it a situation where it was not clear that the plaintiff was in the district? In that situation, no, Your Honor. Okay. I still don't understand. I mean, if it's a gray area, sure, standing is a gray area. I mean, we have cases on this week where standing is a gray area, but it's a question of why is it a gray area. Your Honor, the why is it a gray area is because you have a statute whose construction is based on initially harm to a class of minorities based on the color of their skin. However, to have standing to sue based on harm that is caused to the community based on the root cause, which might be targeted towards a specific minority, does not in any or at least there's no precedent saying that it means that other people cannot also be tangentially harmed, which is the case before us today where Frank Vaughn, you know, votes intimately with people of a specific minority voting bloc who absolutely, well, their vote is frankly muffled by the at-large voting scheme in the school district. So, to hold other . . . I kind of get the argument. I mean, I guess I go back to was that argument made to the district court? And secondly, we're on abuse of discretion. The district court found it was frivolous. So, what I'm hearing you say is, well, it's an open question. I'm not sure it's an open question, but you do agree we would have to reverse. We'd have to say the district court abused his discretion in finding that this was frivolous, right? Yes, Your Honor, and the grounds for doing that are the law of the case did not prohibit, sorry, the law of the Fifth Circuit did not prohibit the plaintiff's claim here until the summary judgment phase. And, you know, the heart of frivolity is knowing or the necessary awareness that a rule exists barring your claim before you file it or before you engage in proceedings that you know shouldn't be engaged in. And the fact of the matter is, by time the lower court adopted that rule kind of by inception through its motion for summary judgment holding, finding there was no standing, you know, it wasn't the law of the Fifth Circuit until that occurred. The district court doesn't make the law of the Fifth Circuit. What we should be focused on is whether our law or the Supreme Court jurisprudence controlling law would have made that argument so out of bounds that it's frivolous. I mean, and I think you have a hard row to hoe because this plaintiff is white and the whole gravamen of the Voting Rights Act, at least Section 2 I think is what we're talking about here is the dilution of minority voting rights and he's not a minority. Your Honor, and the plaintiff absolutely made allegations and conducted discovery to eventually provide evidence at trial that minority vote in the jurisdiction is diluted by the at-large voting system. Now, that is a separate issue. It's not really unusual at all for people of an opposite race to complain about a discriminatory practice that obtains because they have the right to be considered in a section process  When redistricting cases, I've spent 10 years doing that, the voters have the right to challenge on whatever basis because when you draw the lines with X, it has Y consequences. So there are strangers to it. In other words, it's not simply a right that necessarily belongs, in my view, to an individual in terms of their standing. It is that the system is flawed and because they are a participant in it, that's the argument I suppose, whether it flies or not, here's something else, but that runs throughout the Voting Rights Act and all of them. And basic equal protection doctrine. Yes, Your Honor, and the plaintiff, Mr. Vaughn, is a victim of a flawed system. I circle back to what did you tell this judge about that? In the district court, we told the judge that Voting Rights Act cases or any sort of case that touches on racial gerrymandering has a gray area of standing. There are not clear elements precluding standing. I just don't get that gray area of standing. Where are the cases that suggest that a white plaintiff can bring a section, a dilution claim? I know there are gray areas of standing in the Voting Rights Act. I'm just not aware that this is a gray area. Your Honor, it's not settled and there is not a dead-on precedent that we can show, but for purposes of a finding that the case was frivolous or that the plaintiff knew or should have known that he could not confer standing, which by no means are we contesting right now. I think the door is absolutely wide open to make the right test case, even on behalf of a white plaintiff in similar situations. But wasn't summary judgment granted on the merits? Your Honor, summary judgment was granted based on lack of standing, so it didn't touch the actual. . . Appealing that. Your Honor, we initiated an appeal. Unfortunately, the client had to dismiss on a technical mootness issue because he left the jurisdiction during pendency of the appeal. So subsequently, when the sanctions order came down, it essentially chills the prospect of bringing the test case later on to actually clarify, is there an element of standing under Section 2 of the Voting Rights Act that requires you to be of the same minority, of the same ethnicity as the ethnicity that has their vote muffled on the grounds of race and still at the same time not be able to be harmed yourself? But you have enough Supreme Court decisions that focus on voter participation, and they have knocked out cases where they fail to have a member, a voter of the particular district that was being argued to be redistricting, but not on the basis of race, but on participatory rights in the voting process. So, I mean, that's . . . Do you have . . . I mean, so on this, do you have other grounds that you think the district court should be reversed? I thought you made more than just this argument. Yes. So I will say that we absolutely did allege that our plaintiff is a member of the district where his harm occurred. But as far as . . . Did you go back to the district court when they sanctioned you to look for reconsideration and point out, there's a lot of law out there. We can argue in a lot of ways, but the district judge should have the benefit of knowing that what you think is wrong in terms of his analysis. Yes, Your Honor. On the motion for sanctions proceedings, we did argue that there was no finding of inability to assert a claim on the merits. And that argument is concurrent with the argument that we have here. We didn't use those exact words on the motion for sanctions. Now, in the motion to dismiss, the record is papered with that argument. As for Justice Duncan's comments about the other grounds for the overturn of appeal, the depositions at issue that supported a 1927 award were not vexatious. They were completely irrelevant. Well, you'll have some time. I'd like to ask, and you just barely got into it and your time expired, but with regard, part of the sanctions award by the district court was based upon lines of questioning at the depositions. These depositions were some seven hours long, and there were various lines of questioning that are highlighted in the briefing and in the record excerpts of topics that appear to be entirely irrelevant to the issue of the gerrymandered district or dilution question. Your argument on that, as I understand it, in your brief is that one of the arguments is that the defendant didn't seek any protective order or any other type of relief from those questions. Are there any cases that suggest that a defendant's or a party's failure to avail themselves of a protective order, that that should somehow ameliorate abusive conduct or reduce a sanction for abusive conduct? Yes, Your Honor. And in the warden matter, which is also out of the northern district of Illinois, for example, there's a suggestion that failure to move for protective order under 30B can potentially weigh into the calculus of whether or not proceedings are vexatious. And I think the practical implications there are, look, Rule 30B gives litigants a clear way to handle situations that they truly think are harassing and frivolous, and that's to end a deposition and move for a protective order. Opposing counsel in this matter did not do that. But does that—the failure to do it, is there a case that says if you fail to do it, you're precluded from seeking sanctions or that your sanctions should be diminished? That's the case I'm looking for, especially if it's a Fifth Circuit or district court within the Fifth Circuit. Not on this record, Your Honor. But you should hold that is the case today because what the practical implications there are is Rule 30B doesn't matter. Instead, you're endorsing a litigation strategy where rather than seeking relief that's provided to you under Rule 30B, you just allow these depositions to keep happening, but we're no means conceding that the questioning was irrelevant, especially within the parameters of the updated proportionality standards of Rule 26, which were also added after the 2014 case that the lower court appears to rely on in making that finding. That's the Northern District, Illinois case out of the 2014. But essentially what this—allowing this holding to stand endorses an ability of litigants to just allow depositions to keep proceeding that they do think are harassing, but instead wait until after summary judgment so then you can raise your frivolity argument to bolster a sanctions claim rather than nipping it at the bud and preventing these purportedly frivolous depositions from taking place in the first place. Your Honor, I'm out of time. I will reserve for rebuttal. Ms. Walker. Thank you. May it please the Court. Meredith Walker on behalf of Louisville ISD. I want to direct the Court at the outset to a quote from Mr. Vaughn's reasoning for bringing the case in the first instance. He specifically said that he was trying to bring a case on behalf of his friends and neighbors and trying to address the issues that he contended were wrong with Louisville ISD's voting rights system. He specifically said that the current electoral process denies my friends and neighbors, African Americans, Hispanics, Asians, and other minorities an equal opportunity to elect representatives of their choice. That's at the record on appeal at 626. He never made an argument to the District Court that there was an extension of the standing doctrine that should be applied here. Instead, he affirmatively argued to the District Court that he did have standing. And two of the cases that he directed the District Court for that proposition were United States v. Brown and Harding v. the City of Dallas. It's axiomatic that the United States absolutely has standing to enforce its own laws. Not applicable here. And then in Harding v. the City of Dallas, the District Court found that there was standing given the county's dilution of the white vote by unevenly dispersing the white population. So, of course, in that instance, the white plaintiff absolutely had standing to bring those claims. But then when you look at some of the other cases that Mr. Vaughn cites to you, it just does not support an extension of standing. But the overall problem... So, counsel, I mean, so I think you can appreciate that we do not want a rule of law that says when a plaintiff brings a lawsuit and fails on standing, there will be sanctions, right? Absolutely. That doesn't work. Absolutely. I would, you know, a lot of lawyers would hang up their shingle and go be insurance salesmen, right? So how do we discern the difference between an argument that is not meritorious? No one has cited a case to me yet that says a plaintiff of a different race can complain about the dilution of other races' votes. Maybe that will be the law in 2107, but it's not the law now, and nobody can cite me a case that says it. So it sounds not meritorious. Great. What's the difference between that and a frivolous argument that merits sanctions, or at least the sanctions we would not reverse them for abuse of discretion? So here the issue is, is that instead of arguing for an extension of standing and directing the district court to cases that would support this extension of standing or otherwise even making that argument, he just affirmatively said and stated that he absolutely did have standing. And then the overarching problem here is when we moved for attorney's fees or when Louis VillaySD moved for attorney's fees, at no time did they say, oh, district court, we were arguing for an extension of standing, and so we shouldn't be sanctioned, we shouldn't get attorney's fees because we had a legitimate argument. Instead, he said that the district court's dismissal of Vaughn's claim for lack of standing is not the equivalent of a decision on the merits, so they essentially said you can't get attorney's fees because this is not a merits decision, which we obviously disagree with. And then he said the district court did not determine the merits of his claim were frivolous. At no point in response to the motion for attorney's fees did they ever say we are arguing for an extension. White plaintiffs should be able to bring a lawsuit on behalf of their friends and neighbors, and this is why we had a meritorious argument, and this is why there should be no attorney's fees. That never happened. Counsel, let me go back to my follow-up on a question of my colleague about what other abuses. I got the sense that the district court was concerned about overwrought depositions, abuse of discovery process, et cetera. I see a real difference between abuse of that type and someone making an argument that doesn't fly. I mean, the simple answer to say the claim is it's dismissed. So my question is what is there beyond the argument of the failing argument? And I don't find it so bereft of merit that in making the argument I should be sanctioned for that. But the question is what else was going on that the court was obviously very frustrated. Right. Well, when you look at it here, we moved for attorney's fees based on it not being meritorious. And then under the sanctions standard under 1927, we asked that Vaughn's attorneys be held jointly and severally liable. And the reason for that is we recognize that that particular statute does not allow to shift the entire cost of the burden or, I'm sorry, shift the entire burden of the cost of the proceedings to the other party, which is why we only sought a portion of our attorney's fees. But when you look at the district court's order talking about the bedrock principle of standing and you look at the experience that the Brewer storefront has in litigating these types of Voting Rights Act cases. That's something else. I'm not a stranger to that territory or the litigants. What's his frustration with this particular storefront operation that the Brewer offered? And I can understand. It's just something else going on here in a sense. The district judge doesn't level these kinds of things. You'd be just frustrated if somebody filed a meritless argument, a lawsuit. I can't speak for the district court other than what is in the record before this court. I'm not asking you to do that. I'm just, what else is going on that was abusive of process other than a lawsuit like merit? Other than what we provided to the court or the district court in the record, which was the deposition transcripts and the declarations from the attorneys representing Louisville ISD regarding the conduct of counsel. And that's another concern to bring up to the court, which is at no point has the Brewer storefront or the attorneys that were involved in the depositions provided the court with any evidence or they have not refuted in any manner the declaration testimony that came from counsel in this matter. It's very clear to me that they did not think the court was going to grant fees, that they didn't submit any affidavits or otherwise argue for an extension of law. They threw up a quick brief. They didn't think it was going to go anywhere. And now we're standing before this panel arguing about whether the district court abused his discretion. Did the defendant ask for sanctions or was that spontaneous from the court? No, we asked for the Brewer storefront to be held jointly and severally liable under 1927 for their conduct in depositions. And, again, you can look at it. It's in the records. You have all the depositions. But we meandered far afield in those depositions talking about. I thought that was based on the 1927 argument was based on the abuses of the deposition costs, going on and on and on, et cetera, et cetera. Yes. So the court granted attorneys fees under 10301 for the frivolous and unreasonable lawsuit. And then the district court then turned around and held the Brewer storefront jointly and severally liable under Section 1927 for their conduct in the depositions. And meandering far afield talking about Title IX, asking trustees what their opinions are on carrying guns in the classroom, asking one trustee his personal— Counsel, counsel, let me ask you the same question I asked your opponent. You just gave us sort of a list, or I interrupted you. You were giving us a list of inappropriate lines of questioning. Was there any attempt to terminate the deposition or instruct the witness not to answer or to seek relief from the court? That's my first question. And my second question is why should we not figure that into a sanction when we considered what the district court did with regard to sanctions? So we did object, obviously, during the deposition. The Eastern District rules provide for objection form. We objected accordingly. There were a few instances where I do believe that we instructed the witness not to answer. We're also talking about trustees who are unpaid elected members who have taken off of their day job to come do these depositions and to shut the deposition down in the middle and then to engage in a lengthy, costly discovery battle as opposed to letting them finish the deposition, being done with our seven hours of time under the federal rules and letting them move on down the road with their life as elected members who are doing this for free was a decision that we made as counsel. And being able to make that decision as counsel does not somehow relieve them from the burden of behaving under the rules and not pursuing harassing and annoying lines of question. And that's the equivalent of essentially saying that somebody saw that a crime was committed, but they didn't report it to later, so somehow that makes it okay. That's not how it works. There's Section 1927. Counsel, did you move for a motion to dismiss or a motion for summary judgment? We moved for which part? I'm sorry, Your Honor. I'm sorry. What was your question, the motion to dismiss or a motion for summary judgment? Did you move to dismiss or for failure to state a claim or for summary judgment? No, we did not raise standing until we got to the summary judgment stage because the district court we were originally assigned to was Judge Mazant, and Judge Mazant is rather infamous for not granting dispositive motions. I'm sorry. I don't understand. If you'll slow down just a little bit. Sorry. We were originally assigned to Judge Mazant, and Judge Mazant is rather infamous for not granting dispositive motions, and so we did not raise standing until we got to the motion for summary judgment stage. And at that time we had been transferred from Judge Mazant to Judge Jordan. I get the picture where they're starting to take the depositions of board members who are citizens, just volunteer citizens, et cetera, et cetera. In other words, you have what appears to be an abusive process going on, as you so found. But then if the suit is so utterly frivolous, then I would have thought that the school district would have been making that argument in the motion to dismiss our summary judgment or getting that upfront decision. We did, which is why we filed it when we filed our motion for summary judgment. We filed for standing and we filed on the merits, and Judge Jordan chose not to address the merits because he dismissed it. He chose not to address the merits because he chose to dismiss it based on standing. When the allegedly abusive depositions occurred, had your motion for summary judgment based on standing been filed? No. We filed one motion for summary judgment addressing both issues within the court's scheduling order. Okay. So turning back to the deposition testimony, as I was telling Judge Engelhardt, we have several lines of questioning that are incredibly just irrelevant to the issue at hand. And given what happened during the depositions, coupled with the complete failure to argue for an extension of the standing law and the complete failure to address that before the district court, Lewis ISD believes that the district court did not abuse its discretion in granting attorneys' fees under 10301 and then in holding the Brewer-Storefront jointly and separately liable for those attorneys' fees under Section 1927. I will cede the rest of my time unless the court has any additional questions for me. Thank you, counsel. Thank you. Mr. Ford, you have five minutes for rebuttal. Your Honor, I want to clarify. I misspoke previously about the Warden case for the concept of Rule 30B, Motion for Protective Order, being a factor in the frivolity determination. The correct case is actually the Redwood matter, which is 476 Federal 3rd 462, and that's out of the Seventh Circuit 2007. So I wanted to get that out of the way. But to address opposing counsel's arguments in order here, she pointed out that the plaintiff's reasoning for bringing the case was to bring it on behalf of third parties. That's not entirely accurate. And the language that she cites about having colleagues and neighbors of minorities that are harmed does not foreclose the possibility of his standing. And, in fact, it doesn't eliminate the pleadings that assert that he is a member of the jurisdiction that they vote in, the jurisdiction that has impacted and has also impacted himself. Now, as far as the preservation— What is the allegation about—I was puzzled by that argument about friends and so forth. The implication is that we don't have standing, but we have friends that do. I don't understand what the argument is. Your Honor, the fact that—well, the allegation that he raises that he is a voter in that jurisdiction and votes with— I understand that argument, but I thought you were telling the district court that talking about friends of that and people who have been, in some fashion, injured, have been abused in some fashion by the school district. But that suggests to me that you were reporting to make arguments that belong to people who are not parties to the lawsuit. Your Honor, the arguments may very well also belong to people who are not parties to the lawsuit. But the background emphasis of that factual allegation is that the plaintiff votes with his friends and neighbors within the jurisdiction. And the jurisdiction as a whole, meaning every individual that votes in that jurisdiction with the harmed ethnicity, is also harmed themselves. So the plaintiff is, in fact— I understand that argument, but they—anyway, I don't think we're on the same wavelength. Is he either making a third-party standing argument or he's making a first-party standing argument, or both? And I think to add to what Judge Higginbotham just said, we're having difficulty understanding what the standing theory was. Your Honor, on the record before us today, and the one that saves the sanctions argument here is it never really got to that point. There is absolutely a first-party standing theory there. Now, it hasn't been— What is it? That's what we're asking. What is the theory of first-party standing? The first-party standing theory is that as an individual in a district where that individual votes with a minority voting bloc whose votes are muffled based on the color of their skin, that first party is also harmed. I don't think the outcome of the Voting Rights Act is to force all white people to vote together in unison or force all minorities to vote together in unison. There's no rule saying that the plaintiff can't have political convictions or moral convictions that require he vote with a voting bloc. And if that voting bloc is not able to have political power due to racial discrimination, then the practical effect is the person who votes with that bloc, even if they're not the same skin color, they're also harmed in fact. Okay. That's the theory, and then we'll look at the record to see if that was actually a theory that was propounded to the district court. Right. And, Your Honor, the door should very well be open, and I think it's still open in the Fifth Circuit to—oh, I'm out of time. The door is still open, and the case is not frivolous. Thank you, counsel. We will take the matter under advisement. That concludes our arguments for the day. The panel will stand in recess until 9 o'clock a.m. tomorrow morning. Thank you, counsel.